John Ryan Gustafson (SBN 220802)
Adam C. Nicolai (SBN 289290)
**GUSTAFSON NICOLAI pc**
222 N. Sepulveda Blvd., Suite 2000
El Segundo, CA 90245
T: (310) 361-0787; F: (310) 846-8938
E: jrg@gnlawpc.com; acn@gnlawpc.com

*Attorneys for Plaintiff*, **KEITH BROWN**

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KEITH BROWN,** an individual,<br><br>*Plaintiff,*<br><br>v.<br><br>**ARTEC GLOBAL MEDIA, INC.**, a Nevada corporation; **BART AND ASSOCIATES, LLC,** a Colorado limited liability company; **STONE DOUGLASS**, an individual**; NOVA CAPITAL ADVISORS, LLC**, a California limited liability company; **PETERSON SULLIVAN LLP**, a Washington limited liability partnership; **WALTER WELSH**, an individual; **CALEB WICKMAN**, an individual; and **MASON YAMASHIRO**, an individual,<br><br>*Defendants.* | Case No.: 16 cv 2651 WQH KSC<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. **FEDERAL SECURITIES LAWS VIOLATIONS – SECTION 10(b) OF THE SECURITIES EXCHANGE ACT (THE "EXCHANGE ACT") AND RULE 10b-5**<br>2. **FEDERAL SECURITIES LAWS VIOLATIONS – SECTION 11 OF THE EXCHANGE ACT**<br>3. **FEDERAL SECURITIES LAWS VIOLATIONS – SECTION 11 OF THE EXCHANGE ACT**<br>4. **FEDERAL SECURITIES LAWS VIOLATIONS – SECTION 18 OF THE EXCHANGE ACT**<br>5. **COMMON LAW FRAUD/INTENTIONAL MISREPRESENTATION**<br>6. **NEGLIGENT MISREPRESENTATION**<br>7. **VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, *ET SEQ*.**<br>8. **BREACH OF CONTRACT**<br>9. **BREACH OF FIDUCIARY DUTY**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

**NATURE OF THE ACTION**

1.     This is an action by Keith Brown ("PLAINTIFF") for federal securities fraud and related state law claims arising from the conduct of Defendants Walter Welsh ("WELSH"), Nova Capital Advisors, LLC ("NOVA"), Caleb Wickman ("WICKMAN"), Stone Douglass ("DOUGLASS") and Mason Yamashiro ("YAMASHIRO") in connection with the sale of shares in a sham company known as Artec Global Media, Inc. ("ARTEC"). Also named as defendants are Peterson Sullivan LLP ("PETERSON SULLIVAN"), the auditor of ARTEC, and Bart and Associates, LLC ("BART"), a law firm retained by PLAINTIFF at the behest of WELSH.

2.     WELSH, individually and by and through NOVA, acted as an agent of ARTEC, DOUGLASS, WICKMAN and YAMASHIRO.

3.     WICKMAN is listed in promotional materials as the "Founder, CEO, President, Treasurer and Secretary" for ARTEC. DOUGLASS is listed as "Executive Chairman" of the company and YAMASHIRO is said to be the "Director, Student Loan Division" in ARTEC marketing materials. WELSH is an unlicensed "broker" who solicited funds on behalf of ARTEC and held himself out as having control and ownership of ARTEC, as well as a close personal relationship with WICKMAN and DOUGLASS.

4.     ARTEC purports to be a vibrant company that, according to its 10-K/A filing:

> [I]s a twenty-first century marketing firm dedicated to helping its clients improve the return on their marketing dollars by delivering measurable marketing results in an increasingly digital world. We provide online marketing and reporting solutions, including lead generation, performance media, affiliate marketing and other related web services and consultation. We use world-class technology solutions to create advertising campaigns, optimize those campaigns in real time and track tangible results. We focus on serving clients in large, information-intensive industry verticals where relevant, targeted media and offerings

help visitors make informed choices, find the products that match their needs, and thus become qualified customer prospects for our clients.[1]

5.      In reality, ARTEC is an investment scheme that has no assets, no customers, no core line of business and no bank accounts.  ARTEC does not maintain an active website and its principal place of business is a mailbox rented for the sole purpose of deceiving the public into thinking that ARTEC is a going concern. ARTEC is a shell company created and controlled by DOUGLASS, WELSH and/or NOVA, WICKMAN and YAMASHIRO for the sole purpose of raising capital for the personal accounts of DOUGLASS, WELSH and/or NOVA, WICKMAN and YAMASHIRO.

6.      DOUGLASS, WELSH and/or NOVA, WICKMAN and YAMASHIRO have, and continue to, intermingle their personal and/or corporate assets with those of ARTEC in such a manner that it is difficult to discern whether the assets of DOUGLASS, WELSH and/or NOVA, WICKMAN and YAMASHIRO are indeed the assets of ARTEC.

**JURISDICTION AND VENUE**

7.      This Court has original jurisdiction over this action pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78, *et seq.* and Securities Exchange Commission ("SEC") Rule 10(b)(5) at 17 C.F.R § 240.10b-5.

8.      This Court has supplemental jurisdiction over the related Counts Five (5) through Nine (9) because these claims are so related to the federal claims that they form a part of the same case or controversy under 28 U.S.C. § 1367, thereby warranting supplemental jurisdiction over those Counts.

9.      In response to Plaintiff's Complaint filed on or about October 26, 2016 (the "Complaint") (Dkt # 1), Defendants ARTEC, WICKMAN and DOUGLASS

---

[1] Taken from the ARTEC 10-K/A dated June 22, 2016.

3

**COMPLAINT**

1    filed a Motion to Dismiss, or Alternatively Transfer Venue in Accordance with 28

2    U.S.C. §1404 on or about December 21, 2016 (the "Motion to Dismiss") (Dkt # 25).

3        10.    The Motion to Dismiss sets forth the following:

4           • [ARTEC] is registered with the California Franchise Tax Board under

5             Entity #C3710170; (*Motion to Dismiss;* Page 8; Lines 7-8)

6           • ARTEC is a publicly traded company under the stock symbol

7             ACTL:OTC in the Over the Counter market in the United States;

8             (*Motion to Dismiss;* Page 8; Lines 18-20)

9           • Wickman is the sole officer of [ARTEC]… (*Motion to Dismiss;* Page

10            8; Lines 11-13);

11          • Caleb Wickman has an address in Solana Beach, California *(Motion*

12            *to Dismiss; Page 5; Lines 20-23*); *and*

13          • Douglass is identified as the Company [ARTEC] Chairman…(*Motion*

14            *to Dismiss*; Page 8; Lines 14-17).

15

16       11.    Without question, this Court has personal jurisdiction over all

17   Defendants as they each are either domiciled in the State of California and/or

18   conducted business within the State of California and this federal judicial district, as

19   set forth in the Motion to Dismiss.  Further, venue is proper as to all Defendants

20   under 28 U.S.C. § 1391(b)(1) because all Defendants are subject to personal

21   jurisdiction of this Court under 28 U.S.C. § 1391(c)(1) or (2), or under 28 U.S.C. §

22   1391(d). Furthermore, venue is proper as to all Defendants under 28 U.S.C. §

23   1391(b)(2) because this judicial district is where a substantial part of the events or

24   omissions giving rise to the claim occurred.  Notwithstanding the foregoing, the

25   Motion to Dismiss alleges that PLAINTIFF entered into a contract that contained a

26   choice of law and venue clause that purports to make Nevada the proper venue for

27   this action.  The Motion to Dismiss does not contain or present a copy of the

28

**COMPLAINT**

1    agreement that was allegedly executed by PLAINTIFF.  Perhaps most importantly,

2    both the Supreme Court and the Ninth Circuit Court of Appeals have identified fraud

3    as a proper ground for repudiating a forum selection clause.  Fraud is specifically

4    pleaded against Defendants ARTEC, DOUGLASS and WICKMAN, *infra*.[2]

5         12.    Moreover, as to all Defendants, and in particular as to Defendants BART

6    and PETERSON SULLIVAN, personal jurisdiction and venue are proper as BART

7    and PETERSON SULLIVAN aided and abetted ARTEC, DOUGLASS, NOVA,

8    WELSH, WICKMAN and YAMASHIRO in a common scheme of acts and

9    transactions constituting violations of the Securities Exchange Act of 1934, codified

10   at 15 U.S.C. § 78a, *et seq.*

11

12                              **THE PARTIES**

13        13.    Plaintiff Keith Brown ("PLAINTIFF") is a natural person who resides in

14   Vancouver, British Columbia, Canada.

15        14.    Defendant ARTEC is a Nevada corporation and is currently in "Default"

16   with the Nevada Secretary of State.  ARTEC is currently listed as "FTB Suspended"

17   with the California Secretary of State.  Currently, ARTEC is not authorized to

18   conduct business in either Nevada or California.  ARTEC trades in the Over the

19   Counter Market under the symbol "ACTL."

20        15.    Defendant BART is a Colorado limited liability company with its

21   principal place of business in Greenwood Village, Colorado.

22        16.    NOVA is a California limited liability company with its principal place

23   of business in San Marcos, California.

24        17.    Defendant PETERSON SULLIVAN is a Washington limited liability

25   partnership with its principal place of business in Seattle, Washington.

26

27   ───────────────────
     [2]  *See, e.g. Richards v. Lloyd's of London* 135 F.3d 1289 (9th Cir. 1998)(citing *M/S Bremen v.*

28   *Zapata Offshore Co.,* 407 U.S. 1, 12-13 (1972)).

                                   **COMPLAINT**

18.     Defendant WELSH is a natural person who resides in San Diego County, California.

19.     Defendant WICKMAN is a natural person who resides in San Diego County, California.

20.     Defendant DOUGLASS is a natural person who resides in San Diego County, California.

21.     Defendant YAMASHIRO is a natural person who resides in San Diego County, California.

**COMMON ALLEGATIONS**

22.     In or around February 2015, PLAINTIFF was introduced to WELSH, the principal and sole owner of NOVA, through a mutual acquaintance.  During initial meetings between PLAINTIFF and WELSH, WELSH held himself out as knowledgeable in business affairs and boasted of his ability to assist investors in finding profitable investments.  During subsequent contact with PLAINTIFF, WELSH asked whether PLAINTIFF was interested in making an investment through WELSH and NOVA in ARTEC.

23.     During numerous conversations with PLAINTIFF, WELSH stated that he knew the principals of ARTEC and that he understood the business of ARTEC very well.  WELSH purported to be excited about the prospects of ARTEC and claimed that he liked the investment so much that he, his family members and his family trust were all heavily invested in ARTEC.  Furthermore, WELSH praised the management skills of DOUGLASS and WICKMAN and the inclusion of YAMASHIRO in the company.  WELSH, on his own behalf, and as the principal of NOVA, provided PLAINTIFF with marketing materials and subscription documents for ARTEC.  WELSH and NOVA stated to PLAINTIFF that they were agents of ARTEC.

**COMPLAINT**

24.     On or about March 26, 2015, at the urging of WELSH, PLAINTIFF executed a subscription agreement in which he purportedly purchased Fifty Thousand (50,000) shares of ARTEC at a price of One Dollar ($1.00) per share, or Fifty Thousand Dollars ($50,000.00) worth of ARTEC stock.

25.     After PLAINTIFF's initial investment in ARTEC, WELSH repeatedly told PLAINTIFF how pleased he was that PLAINTIFF had made this investment and that the investment in ARTEC would pay PLAINTIFF many multiples of his initial investment.  WELSH continued to praise the company and the management skills of DOUGLASS and WICKMAN, as well as the inclusion of YAMASHIRO in the company.  As part of his various conversations with PLAINTIFF, WELSH mentioned that despite the stewardship of DOUGLASS, WICKMAN, and YAMASHIRO, ARTEC was soliciting additional investments in the company as the company was in the process of making several strategic acquisitions that would bolster ARTEC's business and improve its balance sheet.  WELSH repeatedly made representations to PLAINTIFF that ARTEC needed additional monies, and that the company's stock price would increase as a result of the cash raise that was coming from unspecified investors in ARTEC.  WELSH also told PLAINTIFF that if PLAINTIFF wanted to protect his initial investment in ARTEC, he needed to immediately invest additional monies in ARTEC through WELSH.

26.     On or about May 6, 2015, WELSH, by and through NOVA, presented PLAINTIFF with a "Stock Purchase Agreement."  WELSH informed PLAINTIFF that his execution of the agreement and payment of One Hundred Thousand Dollars ($100,000.00) would help ensure that PLAINTIFF's initial investment was secure (by assisting the company to make strategic acquisitions and clean up its balance sheet), and that the additional investment would allow PLAINTIFF to further participate in the upside of ARTEC.  In exchange for payment, PLAINTIFF was to receive One Hundred Thousand (100,000) shares of ARTEC.  As with PLAINTIFF's previous

**COMPLAINT**

investment, the ARTEC stock was issued at One Dollar ($1.00) per share. Curiously, the Stock Purchase Agreement presented to PLAINTIFF by WELSH required payment to NOVA/WELSH, and *not* to ARTEC. Of course, this contradicted WELSH'S claim that the money was needed to raise funds for ARTEC, as in reality it only helped to raise funds for WELSH and/or NOVA. WELSH told PLAINTIFF that PLAINTIFF would not regret his decision to invest additional monies and that ARTEC, under the leadership of DOUGLASS, WICKMAN and YAMASHIRO (with the assistance of WELSH) would trade at several multiples of PLAINTIFF's investments in the company.

27. Thereafter, when PLAINTIFF attempted to register his shares of ARTEC with his longtime broker-dealer, his broker-dealer advised PLAINTIFF that due to the nature and price of the securities, they could not be held with PLAINTIFF's broker-dealer. PLAINTIFF'S broker-dealer was not willing to hold any securities that traded for less than One Cent ($.01). At that time, shares of ARTEC were trading at One Thousandth of One Dollar ($.001) per share, substantially less than the premium that PLAINTIFF paid for his shares. PLAINTIFF informed WELSH of his inability to deposit his ARTEC shares with his existing broker-dealer. WELSH suggested that PLAINTIFF have his shares held in "book form" at a Florida-based transfer agent. WELSH insisted that if the shares were held at this transfer agent, PLAINTIFF would be able to immediately sell his shares for a tremendous gain over PLAINTIFF's cost basis in the ARTEC shares. In an effort to "assist" PLAINTIFF, WELSH made an introduction to BART, who, as told by WELSH to PLAINTIFF, would provide PLAINTIFF with a legal opinion that would allow PLAINTIFF to deposit his shares in ARTEC with the transfer agent. PLAINTIFF did as instructed by WELSH and retained BART.

28. DOUGLASS, WELSH and WICKMAN continued to make numerous misrepresentations regarding PLAINTIFF's holdings in ARTEC. PLAINTIFF began

8

**COMPLAINT**

to suspect that his investments in ARTEC were illegitimate and procured by fraud. He raised this concern with WELSH, who informed PLAINTIFF that ARTEC was a going concern, that PLAINTIFF's fears were unwarranted, and that the company was on the verge of a breakout (or positive business event) that would allow PLAINTIFF to sell his shares in ARTEC for a substantial profit.

29.   Despite these assurances, PLAINTIFF continued to express doubt as to whether ARTEC was indeed a legitimate company.[3]   WELSH offered to facilitate a phone conference in which PLAINTIFF would speak with WICKMAN, DOUGLASS and WELSH.  During PLAINTIFF's phone conference with WICKMAN, DOUGLASS and WELSH, the latter three continued to make false statements regarding the business operations and fiscal health of ARTEC.  Notably, WICKMAN, DOUGLASS and WELSH made repeated false statements about the company, its prospects for future development, and acquisitions that the company would be making.

30.   Despite the assurances of WICKMAN, DOUGLASS and WELSH, PLAINTIFF began to grow increasingly suspicious that his investments in ARTEC were worthless and that PLAINTIFF was trapped in an investment scam. PLAINTIFF complained directly to WELSH.  WELSH stated that he understood PLAINTIFF's frustrations and would help craft a solution that would allow PLAINTIFF to recoup his investment in ARTEC.

31.   WELSH's plan to assist PLAINTIFF was a brazen attempt to extract more funds from PLAINTIFF.  Specifically, in July 2016, WELSH presented PLAINTIFF with another Stock Purchase Agreement whereby WELSH and NOVA would sell Four Thousand (4,000) shares of "Series B Convertible Preferred Stock" in ARTEC to WELSH for the sum of Four Thousand Dollars ($4,000.00).  WELSH

---

[3] PLAINTIFF's fears were warranted.  At various times, according to SEC registration statements, ARTEC claimed to be in the business of "distributing crystal glass floor tile"; online marketing services; and student loan debt consolidation.

**COMPLAINT**

1   and NOVA represented to PLAINTIFF that, under this agreement, ARTEC would

2   create a new class of preferred shares that gave the purported preferred shareholders

3   special liquidation rights and the ability to convert their shares to a more expensive

4   class of stock.

5       32.    In reliance on WELSH's statements and the terms of the Stock Purchase

6   Agreement, PLAINTIFF delivered the sum of Four Thousand Dollars ($4,000.00) to

7   WELSH and NOVA.  WELSH and NOVA never provided the convertible stock to

8   PLAINTIFF despite repeated pleas from PLAINTIFF.  PLAINTIFF continued to

9   inquire about the existence and delivery of the shares and was met with continued

10  stonewalling by WELSH, NOVA, WICKMAN and DOUGLASS.

11

12                          **COUNT ONE**

13              **FEDERAL SECURITIES LAWS VIOLATIONS –**

14  **SECTION 10(b) OF THE SECURITIES AND EXCHANGE ACT AND RULE**

15                              **10b-5**

16           **(AGAINST WELSH, NOVA, ARTEC, WICKMAN,**

17               **DOUGLASS, YAMASHIRO AND BART)**

18      33.    Plaintiff incorporates by reference Paragraphs 1 through 32 above as

19  though fully set forth herein.

20      34.    By knowingly or recklessly misrepresenting the fraudulent nature of

21  ARTEC and by otherwise making material misrepresentations, directly and

22  indirectly, in writing and orally, to PLAINTIFF, by the means and instrumentalities

23  of interstate commerce, or of the mail, in connection with the purchase or sale of

24  securities in ARTEC, Defendants have: (a) employed devices, schemes, or artifices to

25  defraud; (b) made untrue statements of material fact, or omitted to state material facts

26  necessary in order to make the statements made, in light of the circumstances with

27  which they were made, not misleading; and (c) engaged in transactions, acts,

28

**COMPLAINT**

1  practices and courses of business which operated as a fraud upon purchasers of

2  securities. WICKMAN, ARTEC, DOUGLASS, WELSH, NOVA and YAMASHIRO

3  made repeated statements to PLAINTIFF, including, without limitation, that (1)

4  ARTEC was in the process of making a number of "strategic acquisitions" that would

5  allow the company to grow and prosper; (2) ARTEC had a solid core business and

6  that business was increasing; (3) PLAINTIFF's shares in ARTEC would trade at

7  many multiples higher than his initial investment; and (4) WICKMAN and

8  DOUGLASS had significant business experience that would allow them to guide the

9  company to be very profitable.  None of these statements were true.  ARTEC was a

10  shell company that existed only to enrich WELSH, WICKMAN, DOUGLASS and

11  YAMASHIRO. ARTEC's SEC filings at or near the time WELSH, WICKMAN and

12  DOUGLASS were making the foregoing glowing reviews of ARTEC directly

13  contradict their statements to PLAINTIFF.  For example, the company repeatedly

14  made statements that it was having difficulty maintaining its status as a "going

15  concern."[4]  Further, the company's creditors were rapidly converting amounts

16  payable under various promissory notes and lines of credit to equity in the company,[5]

17  indicating that the company did not have sufficient cash flow to pay creditors on a

18  timely basis.  The company was rapidly issuing additional shares of stock for no

19  apparent purpose.  On September 10, 2015, the company issued Seven Hundred Sixty

20  Million (760,000,000) additional shares of stock that was deemed to be necessary to

21  keep the company's business prospects alive.[6]  Of this amount, Ten Million

22  (10,000,000) shares were designated as "blank check" preferred stock without any

23  explanation as to what the "blank check" designation was.  All stock was assigned a

24  par value of $.001 per share, significantly less than what PLAINTIFF paid for his

25

26  [4]  This statement was made in every Form 10-K and Form 10-Q filed by the
company.

27  [5]  ARTEC Form 10-Q for the period ending April 30, 2015.

28  [6]  ARTEC Schedule 14C dated September 28, 2015.

**COMPLAINT**

1  shares.  Despite the financial difficulties faced by the company, ARTEC managed to

2  pay WICKMAN and a separate company wholly owned by WICKMAN tens of

3  thousands of Dollars for "data management and client marketing program services

4  to" ARTEC.

5      35.    As to defendant BART, BART created and delivered to PLAINTIFF a

6  legal opinion letter dated October 21, 2015 (the "BART Opinion"), that stated, *inter*

7  *alia*, (1) that PLAINTIFF owned Five Million (5,000,000) shares of ARTEC; (2) that

8  ARTEC was not a shell company; (3) that ARTEC was in compliance with its

9  reporting requirements with the SEC; and (4) that ARTEC was an active business

10  with a "suite of online marketing and reporting solutions."

11      36.    The statements made in the BART Opinion were false.  BART knew, or

12  should have known, that ARTEC was a fraudulent entity.  BART did not undertake

13  adequate due diligence of WELSH, NOVA, ARTEC, WICKMAN, or DOUGLASS

14  prior to the issuance of the BART Opinion.  Had BART done so, BART would have

15  learned that ARTEC was a fraudulent company and that PLAINTIFF did not have

16  any real interest in the company, and that WELSH, NOVA, WICKMAN, and

17  DOUGLASS were perpetrating a fraud upon PLAINTIFF.  PLAINTIFF reasonably

18  relied to his detriment on the assertions contained in the BART Opinion.

19      37.    By reason of the foregoing conduct, defendants WELSH, NOVA,

20  ARTEC, WICKMAN, DOUGLASS, YAMASHIRO and BART have violated

21  Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.[7]

22      38.    As a result of Defendants' conduct and violation of Section 10(b) of the

23  Exchange Act and Rule 10b-5, Plaintiff has been damaged in an amount exceeding

24  One Hundred Fifty-Four Thousand Dollars ($154,000.00).

25

26

27

28  [7]  Codified at 17 C.F.R § 240.10b-5.

**COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT TWO

## FEDERAL SECURITIES LAWS VIOLATIONS –
## SECTION 11 OF THE SECURITIES AND EXCHANGE ACT
## (AGAINST WICKMAN AND DOUGLASS)

39.     PLAINTIFF incorporates by reference Paragraphs 1 through 38 above as though fully set forth herein.

40.     Federal securities law, pursuant to 15 U.S.C. §77k, prohibits persons from making "untrue statement[s] of a material fact or omit[ing] to state a material fact required to be stated therein or necessary to make the statements therein not misleading" in any registration statement that is or was filed with the Securities and Exchange Commission (the "SEC").

41.     Defendants WICKMAN and DOUGLASS filed, caused to be filed and/or authored numerous registration statements with the SEC, most of which are available at the SEC website https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=0001561865&owner=exclude&count=40&hidefilings=0.

42.     The Form 10-Q for the period ending January 31, 2015 and the Form 10-Q filed for the period ending April 30, 2015, contained numerous false statements, including, *inter alia*, the following:

- Artec owns or accesses targeted databases and utilizes proprietary technology to create local, regional and national marketing campaigns on demand providing clients with the ability to acquire new customers. We run advertisements or other forms of marketing messages and programs through multiple channels (i.e. Email, Direct Mail, Social Media, SMS, radio and telecommunication) to create responders for client offerings. We optimize client matches and media

13

**COMPLAINT**

yield such that we achieve desired results for clients and a sound financial outcome for Artec.

- We deliver cost-effective marketing results to our clients, predictable and scalable, most typically in the form of a qualified lead, click or call. These leads, clicks or calls can then convert into a customer or sale for the client at a rate that results in an acceptable marketing cost to them. We get paid by clients primarily when we deliver qualified results as defined in our agreements. Typically, leads are routed through a call center or other offline acquisition process. Online leads are usually generated as clicks from websites….

- For advertisers our platform allows us to connect clients to multiple online publishers. For publishers our platform provides access to a significant advertiser base to gain access to a broader range of advertising inventory. The combination of these end-to-end online marketing capabilities enables us to offer clients the simplicity of a single advertising budget that meets their marketing objectives.

- Running thousands of online advertising campaigns simultaneously across multiple publishers poses significant technical challenges. While technologies exist to help larger companies manage and optimize their online marketing spend, we believe that such solutions are too expensive and too complex to scale down to many of our clients' monthly advertising budget. We have built our services, systems and networks for maximum scalability and flexibility to manage these types of campaigns, and we have invested heavily in automation technologies that reduce the level of human intervention required to support these campaigns. This automation is critical to our ability to scale our business and deliver moderately budgeted campaigns in a cost-effective manner.

14

**COMPLAINT**

43.     ARTEC had no core business.  It did not own or have the ability to access proprietary technology; it did not have any clients; it did not have the ability to deliver any product or service; and it most certainly was not "heavily invested in automation technologies."  ARTEC existed solely for the purposes of enriching WICKMAN, DOUGLASS, WELSH and YAMASHIRO and fleecing investors.  ARTEC was, despite the illusions of grandeur, a fraudulent business being run from the apartment of WICKMAN.

44.     WICKMAN and DOUGLASS continued filing false and misleading registration statements with the SEC through September 14, 2016, the date of the last filing of ARTEC.

45.     PLAINTIFF purchased interests in ARTEC in substantial reliance on the false statements made in filed registration statements, as well as the other false statements made by WICKMAN and DOUGLASS as alleged herein.  The false registration statements provided ARTEC with the imprimatur of being a legitimate company.  As a result of WICKMAN and DOUGLASS' conduct and violation of Section 11 of the Exchange Act, PLAINTIFF has been damaged in an amount exceeding One Hundred Fifty-Four Thousand Dollars ($154,000.00), and is also entitled to his reasonable attorneys' fees and costs in connection with the undertaking of this lawsuit under 15 U.S.C. § 77k(e).

## COUNT THREE
## FEDERAL SECURITIES LAWS VIOLATIONS –
## SECTION 11 OF THE SECURITIES AND EXCHANGE ACT
## (AGAINST PETERSON SULLIVAN)

46.     PLAINTIFF incorporates by reference Paragraphs 1 through 45 above as though fully set forth herein.

47.     Pursuant to 15 U.S.C. § 77k(a)(4) civil liability may be imposed on

**COMPLAINT**

[E]very accountant . . . who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him[.]

48.     A "registration statement", as the term is used in 15 U.S.C. § 77k(a)(4), is the document or documents used to register a security, such as ARTEC, with the Securities and Exchange Commission.  The term also includes any "amendment thereto and any report, document, or memorandum filed as part of such statement or incorporated therein by reference."[8]

49.     At some point after ARTEC filed its registration statement with the SEC, PETERSON SULLIVAN was retained as the auditor for ARTEC.  On or about May 17, 2016, PETERSON SULLIVAN certified accounting reports in a registration statement filed with the SEC by ARTEC, namely, the ARTEC Form 10-K Annual Report.  The registration statement filed with the SEC contained accounting reports certified by PETERSON SULLIVAN that were rife with material misrepresentations, omissions and untrue statements of fact that PETERSON SULLIVAN knew or should have known were untrue.

50.     Despite extensive qualifications as to its opinions expressed in registration statements filed with the SEC, had PETERSON SULLIVAN undertaken a modicum of due diligence, it would have discovered that ARTEC was a mere sham entity with no customers, no revenue stream, no core line of business and no assets.  In addition, it would or should have discovered that ARTEC, WICKMAN and DOUGLASS were perpetrating a fraud on the general public.  PETERSON SULLIVAN failed to properly investigate and corroborate information provided by ARTEC, WICKMAN and DOUGLASS, including, but limited to, accounts receivable, assets, shareholder equity, ARTEC liabilities, and various stock purchase

---

[8] 15 U.S.C. § 77b(a)(8).

**COMPLAINT**

1   and sale agreements entered into by ARTEC.  Had PETERSON SULLIVAN

2   performed its professional duties with adequate due diligence, PLAINTIFF would

3   have been sufficiently aware of the true state of ARTEC when he purchased and

4   continued to hold shares in the company.

5         51.    The opinions expressed by PETERSON SULLIVAN, a prestigious

6   accounting firm, gave ARTEC the imprimatur of being a legitimate company.

7         52.    In reliance upon the various registration statements containing false and

8   misleading information, PLAINTIFF continued to hold, and did not attempt to sell or

9   otherwise dispose of, his interest in ARTEC, thereby damaging him an amount

10   exceeding One Hundred Fifty-Four Thousand Dollars ($154,000.00).  Furthermore,

11   PLAINTIFF is entitled to his reasonable attorneys' fees and costs in connection with

12   the undertaking of this lawsuit under 15 U.S.C. § 77k(e).

13

14                     **COUNT FOUR**

15        **FEDERAL SECURITIES LAWS VIOLATIONS –**

16          **SECTION 18 OF THE EXCHANGE ACT**

17          **(AGAINST WICKMAN AND DOUGLASS)**

18         53.    PLAINTIFF incorporates by reference Paragraphs 1 through 52 above as

19   though fully set forth herein.

20         54.    Defendants WICKMAN and DOUGLASS violated 15 U.S.C. § 78(r) by

21   filing false registration statements with the SEC.  Specifically, both WICKMAN and

22   DOUGLASS authored, filed, and/or caused to be filed registration statements that

23   contained materially false statements regarding ARTEC and its market valuation and

24   price for equity interests in the company.  Such statements include, but are not limited

25   to, false and misleading financial statements, products and services offered by the

26   company, technology owned or used by the company, past results achieved by the

27

28

**COMPLAINT**

1  company, and the market for the company's product(s) and service(s).  Each of the

2  foregoing statements undoubtedly affected the market price for the company's stock.

3       55.    PLAINTIFF relied on the statements regarding the company when he

4  purchased his stock positions in the company and was damaged by the misleading

5  statements by WICKMAN and DOUGLASS in registration statements filed with the

6  SEC.

7       56.    As a result of such reliance, PLAINTIFF has been damaged in an

8  amount that exceeds One Hundred Fifty-Four Thousand Dollars ($154,000.00).

9  Furthermore, PLAINTIFF is entitled to his reasonable attorneys' fees and costs in

10  connection with the undertaking of this lawsuit under 15 U.S.C. § 78r(a).

11

12  **COUNT FIVE**

13  **COMMON LAW FRAUD/INTENTIONAL MISREPRESENTATION**

14  **(AGAINST ARTEC, WELSH, NOVA,**

15  **WICKMAN, DOUGLASS AND YAMASHIRO)**

16       57.    PLAINTIFF incorporates by reference Paragraphs 1 through 56 above as

17  though fully set forth herein.

18       58.    ARTEC, WELSH, NOVA, WICKMAN, DOUGLASS, and

19  YAMASHIRO made a number of representations to PLAINTIFF that were material

20  regarding ARTEC, including, but not limited to: (a) that DOUGLASS and

21  WICKMAN were skilled entrepreneurs who excelled at running companies and

22  raising capital for companies like ARTEC; (b) that ARTEC was an existing company

23  with a broad client base actively engaged in business; (c) that ARTEC needed capital

24  to make strategic acquisitions that would allow it to flourish in the marketplace; (d)

25  that WELSH and NOVA were selling stock in ARTEC to raise capital for ARTEC;

26  (e) that ARTEC was creating a new class of stock that would allow for PLAINTIFF

27  to have increased rights upon liquidation and preferred shares in the company; (f) that

28

**COMPLAINT**

1  PLAINTIFF's investments in the company would result in a payout of many

2  multiples of his investments in the company; (g) that ARTEC had at least two (2)

3  offices in San Diego County; (h) that WELSH and his family trust were heavily

4  invested in the company; and (i) that there were other holders of company debt and/or

5  other securities instruments that prevented the company from being adequately

6  capitalized, and for this reason (among other false reasons) WELSH/NOVA was

7  soliciting additional investments in ARTEC from PLAINTIFF and others.

8       59.    Each of the foregoing statements was false and ARTEC, WELSH,

9  NOVA, WICKMAN, DOUGLASS, and YAMASHIRO knew that the statements

10  were false.  In fact, ARTEC, WELSH, NOVA, WICKMAN, DOUGLASS, and

11  YAMASHIRO made these statements knowing that they were false.  They made the

12  statements with the intent that PLAINTIFF rely on the statements.

13       60.    PLAINTIFF reasonably relied on each of the representations and was

14  harmed economically as a result of his reliance on these statements, each of which

15  was a substantial factor in causing the harm suffered by PLAINTIFF (which is at

16  least One Hundred Fifty-Four Thousand Dollars ($154,000.00)).

17       61.    The conduct of ARTEC, WELSH, NOVA, WICKMAN, DOUGLASS,

18  and YAMASHIRO was malicious, oppressive, and fraudulent within the meaning of

19  Cal. Civ. Code § 3294(a) and thus entitles recovery by PLAINTIFF of punitive

20  damages in order to punish and deter ARTEC, WELSH, NOVA, WICKMAN,

21  DOUGLASS, and YAMASHIRO from future conduct of this sort.

22                              **COUNT SIX**

23                    **NEGLIGENT MISREPRESENTATION**

24        **(AGAINST ARTEC, WELSH, NOVA, WICKMAN, DOUGLASS,**

25                **YAMASHIRO AND PETERSON SULLIVAN)**

26       62.    PLAINTIFF incorporates by reference Paragraphs 1 through 61 above as

27  though fully set forth herein.

28

**COMPLAINT**

63.     ARTEC, WELSH, NOVA, WICKMAN, DOUGLASS, and YAMASHIRO made repeated statements, both orally and in writing, that, among other things: (a) DOUGLASS and WICKMAN were skilled entrepreneurs who excelled at running companies and raising capital for companies like ARTEC; (b) ARTEC was an existing company with a broad client base actively engaged in business; (c) ARTEC needed capital to make strategic acquisitions that would allow it to flourish in the marketplace; (d) WELSH and NOVA were selling stock in ARTEC to raise capital for ARTEC; (e) ARTEC was creating a new class of stock that would allow for PLAINTIFF to have increased rights upon liquidation and preferred shares in the company; (f) PLAINTIFF's investments in the company would result in a payout of many multiples of his investments in the company; (g) ARTEC had at least two (2) offices in San Diego County; (h) WELSH and his family trust were heavily invested in the company; and (i) there were other holders of company debt and/or other securities instruments that prevented the company from being adequately capitalized, and for this reason (among other false reasons) WELSH/NOVA was soliciting additional investments in ARTEC from PLAINTIFF and others.  As to Defendant PETERSON SULLIVAN, PETERSON SULLIVAN made written representations in a registration statement adopted and filed by ARTEC with the SEC that, among other things, overstated and/or misstated the financial health and condition of ARTEC, including, but not limited to, accounts receivable, assets, shareholder equity, ARTEC liabilities, and various stock purchase and sale agreements entered into by ARTEC.

64.     These representations were false and ARTEC, WELSH, NOVA, WICKMAN, DOUGLASS, YAMASHIRO and PETERSON SULLIVAN had no reasonable grounds for believing that these statements were true when they were made.

**COMPLAINT**

65.     PLAINTIFF relied on the numerous representations made by ARTEC, WELSH, NOVA, WICKMAN, DOUGLASS, YAMASHIRO, and PETERSON SULLIVAN and those representations were a substantial factor in guiding PLAINTIFF's decision to invest in ARTEC (and, in the case of PETERSON SULLIVAN, PLAINTIFF's decision to hold or not dispose of his shares of ARTEC), causing him substantial economic harm and financial damages in an amount that exceeds One Hundred Fifty-Four Thousand Dollars ($154,000.00).

66.     The conduct of ARTEC, WELSH, NOVA, WICKMAN, DOUGLASS, and YAMASHIRO was malicious, oppressive, and fraudulent within the meaning of Cal. Civ. Code § 3294(a) and thus entitles recovery by PLAINTIFF of punitive damages in order to punish and deter ARTEC, WELSH, NOVA, WICKMAN, DOUGLASS, YAMASHIRO and PETERSON SULLIVAN from future conduct of this sort.

## COUNT SEVEN

## VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE

## (AGAINST ALL DEFENDANTS)

67.     PLAINTIFF incorporates paragraphs 1 through 66 as though fully set forth herein.

68.     The conduct of ARTEC, WELSH, NOVA, WICKMAN, DOUGLASS, YAMASHIRO and PETERSON SULLIVAN, as described herein, constitutes an unlawful as well as unfair business act and practice in violation of California Business and Professions Code §17200, *et seq.*

69.     Under Business and Professions Code §17203, any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined by any court of competent jurisdiction.  The court may also make such order or judgments as may be necessary to restore to any person in interest any money or property that may have been acquired by means of such unfair competition.

**COMPLAINT**

1    70.    PLAINTIFF has suffered injury in fact and has lost money as the result

2   of ARTEC, WELSH, NOVA, WICKMAN, DOUGLASS and YAMASHIRO's unfair

3   business practices.

4                              **COUNT EIGHT**

5                          **BREACH OF CONTRACT**

6                            **(AGAINST WELSH)**

7    71.    PLAINTIFF incorporates paragraphs 1 through 70 as though fully set

8   forth herein.

9    72.    When WELSH provided PLAINTIFF with the Stock Purchase

10  Agreement in July of 2016, WELSH stated that he had authority to negotiate with

11  PLAINTIFF on behalf of WICKMAN, DOUGLASS, and YAMASHIRO.  In reliance

12  upon the statements made by WELSH regarding his authority to act as an agent of

13  WICKMAN, DOUGLASS and YAMASHIRO, PLAINTIFF entered into the contract

14  and paid WELSH and NOVA the sum of Four Thousand Dollars ($4,000.00) and

15  fully performed all conditions under the contract.

16   73.    Conversely, WELSH immediately breached the contract by failing to

17  provide PLAINTIFF with any of the shares referenced in that stock purchase

18  agreement.  No justification or excuse for this non-performance of a material term of

19  the contract exists.

20   74.    As a direct result of the breach of the contract, PLAINTIFF has been

21  harmed economically, in the amount of at least Four Thousand Dollars ($4,000.00).

22

23                              **COUNT NINE**

24                      **BREACH OF FIDUCIARY DUTY**

25                            **(AGAINST BART)**

26   75.    PLAINTIFF incorporates paragraphs 1 through 74 as though fully set

27  forth herein.

28

                              **COMPLAINT**

76.     As PLAINTIFF's retained attorney, BART owed Plaintiff a fiduciary duty.

77.     BART breached its fiduciary duty to Plaintiff by, among other things, creating and delivering to PLAINTIFF a legal opinion letter dated October 21, 2015 (the "BART Opinion"), that stated, *inter alia*, (1) that PLAINTIFF owned Five Million (5,000,000) shares of ARTEC; (2) that ARTEC was not a shell company; (3) that ARTEC was in compliance with its reporting requirements with the SEC; and (4) that ARTEC was an active business with a "suite of online marketing and reporting solutions."  The statements made in the BART Opinion were false.  BART knew, or should have known, that ARTEC was a fraudulent entity.  BART did not undertake adequate due diligence of ARTEC, WICKMAN, DOUGLASS, WELSH or NOVA prior to the issuance of the BART Opinion.  Had BART done so, BART would have learned that ARTEC was a fraudulent company and that PLAINTIFF did not have any real interest in the company.  PLAINTIFF reasonably relied to his detriment on the assertions contained in the BART Opinion.

78.     As a result of BART's breach, PLAINTIFF suffered damages in the amount of at least One Hundred Fifty-Four Thousand Dollars ($154,000.00).

**PRAYER FOR RELIEF**

**WHEREFORE**, PLAINTIFF prays for judgment against all Defendants, and each of them, as follows:

1.  An order enjoining all Defendants from engaging in further unfair business acts and practices;

2.  An order requiring all Defendants to pay restitution to PLAINTIFF in the amount of at least One Hundred Fifty-Four Thousand Dollars ($154,000.00);

**COMPLAINT**

3.   Disgorgement of all monies received from PLAINTIFF by each and every Defendant;

4.   A civil monetary penalty against each Defendant as provided by statute or determined by the Court to be just and proper;

5.   Damages according to proof;

6.   Rescission of PLAINTIFF's investments in ARTEC at the election of PLAINTIFF;

7.   Punitive damages pursuant to Cal. Civ. Code § 3294;

8.   Attorneys' fees and costs of suit;

9.   Pre-judgment interest at the legal rate on all amounts awarded to PLAINTIFF; and

10.  Such other relief as this Court may deem just and proper.


Respectfully submitted,

DATED: January 17, 2017                    **GUSTAFSON NICOLAI pc**

By:   _/s J. Ryan Gustafson_____
J. Ryan Gustafson
Adam C. Nicolai

*Attorneys for Plaintiff,*
KEITH BROWN

**COMPLAINT**

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to the Seventh Amendment of the United States Constitution and Fed. R. Civ. P. 38, PLAINTIFF hereby demands a jury trial as to all counts and issues set forth in this Complaint and as to all issues so triable.

Respectfully submitted,

DATED: January 17, 2016                    **GUSTAFSON NICOLAI pc**

By:   <u>*/s J. Ryan Gustafson*</u>
         J. Ryan Gustafson
         Adam C. Nicolai

*Attorneys for Plaintiff,*
KEITH BROWN

25
**COMPLAINT**